The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: December 28 2012

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 11-30311 |
| | ) | |
| QSI-Fostoria DC, LLC, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION RE: MOTION TO REOPEN

This matter came before the court for hearing on Debtor's motion to reopen this Chapter 7 case ("Motion") [Doc. # 14]. For reasons that will become obvious through the following discussion, Chapter 7 Trustee Ericka S. Parker and judgment creditor BACM 2001-1 Central Park West LLC ("BACM") filed objections to the Motion. [Doc. ## 20, 21, respectively]. Parker, Attorneys for Debtor and Attorneys for BACM appeared in person at the hearing.

The debtor entity filed its voluntary petition for relief under Chapter 7 on January 24, 2011. Parker was the duly appointed and acting Chapter 7 Trustee in the case. The petition was electronically signed on Debtor's behalf under penalties of perjury by another entity called Dale, LLC, on a signature line calling for the "Signature of Authorized Individual." [Doc. # 1, p. 3/31]. The name Daniel J. LaValley also appears on the petition. [*Id.*]. LaValley did not sign the petition, electronically or otherwise. His manual signature on behalf of and as a member of Dale, LLC does appear on the electronic filing signature declaration form

subsequently filed with the court. [Doc. # 6].[1] The petition also represented that "Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors." [Doc. # 1, p. 1/31]. Accordingly the Clerk's standard notice of commencement of the case directed creditors not to file claims absent a separate notice to do so upon determination of assets for distribution, [Doc. # 3]. *See* Fed. R. Bankr. P. 2002(e).

Debtor's bankruptcy schedules show only one asset, an account at Huntington with $85 in it. [Doc. # 1, p. 7/31]. The schedules list BACM on Schedule F as an unsecured judgment creditor owed $1,5000,000.00. [*Id.*, p. 12/31]. Its debt is not listed as contingent, unliquidated or disputed. There are only seven other individuals and entities listed on Schedule F, all identified as "Investors" and with four of them identifying LaValley as its Statutory Agent and presumably with his address listed as theirs. There are no creditors listed on Schedules D and E. The only listed non-insider creditor is thus BACM.

Debtor's Statement of Financial Affairs reflected no income from business operations in the two years before filing, [*Id.*, p. 19/31], and stated that Debtor had not engaged in any business in the six years before filing, [*Id.*, p. 23/31]. It also disclosed a lawsuit captioned BACM 2001-1 Central Park West LLC v. Gersten et al, 10-CV-00425-JZ, as an "Action to Claim Settlement Funds Paid to Settle Monetary Claims," pending in the federal district court. [*Id.*, at p. 20/31].

The Declarations Under Penalty of Perjury On Behalf of Corporation or Partnership relating to the Schedules and Statement of Financial Affairs were signed by Dale, LLC in the same way as the petition. [*Id.*, pp. 18/31, 26/31].

As an entity not entitled to a Chapter 7 discharge, *see* 11 U.S. C. § 727(a)(1), with only one non-insider creditor holding an undisputed claim and one with no active business in at least six years, no income from business operations in at least two years and only an $85 bank account as a scheduled asset, the question "why was this Chapter 7 bankruptcy case filed" fairly leaps off the page with no discernible

---

[1] Had the court been caused to focus earlier on the signature convention on the petition and other documents initiating this case, it might have questioned the validity of its commencement. Limited liability companies do not neatly fit the debtor eligibility definitions. Nevertheless, this court and most others that have considered the issue have held that limited liability companies are eligible to be Chapter 7 or 11 debtors. Where, as here, the managing member is evidently another entity, the unease of application of those definition and eligibility rules is heightened at a minimum. And Debtor probably should have filed a corporate ownership statement under Rule 1007(a)(1), Fed. R. Bankr. P. 1007(a)(1). It did not. But given the court's disposition of the Motion as described below, and that no party in interest has raised this issue, the court will not address it as a further basis to decline to reopen the case. There are other reasons advanced by the parties in interest to deny the Motion.

bankruptcy purpose evident. Indeed Parker quickly filed her no asset report on April 7, 2011, and the case was eventually administratively closed on February 29, 2012, with a total of just 13 docket entries of record.

The filing purpose and strategy became apparent only with the motion to reopen: to protect the "investors" from BACM. As was explained at the hearing on the motion to reopen, the BACM lawsuit referenced in the Statement of Financial Affairs asserts fraudulent transfer claims against the "investors" seeking to avoid distributions of money to them by Debtor dating to March 2006, [Doc. # 14, p. 4/7], and in turn to apply the avoided transfers to pay its judgment. The source of the payments from Debtor to the "investors" sought to be avoided by BACM was a settlement fund from another lawsuit that Debtor had filed. [*Id.*]. As characterized by Debtor's Counsel in the written Motion and at the hearing, Debtor thus has a fraudulent transfer claim against these very same "investors" who are cast as creditors c/o the same LaValley whose name appears on the petition and who manually signed the signature declaration form. The "investors" tried to use the filing of Debtor's bankruptcy case and the fact that no claim had been filed by BACM in the no asset Chapter 7 to support summary judgment in their favor in the federal district court action on the basis of judicial estoppel. As reported by BACM, and not contested by Debtor, on September 12, 2012, the federal district court denied that summary judgment motion, [Doc. # 21, p. 1/39 and Exhibit 1], leading to the filing of the Motion on October 4, 2012.

Section 350 of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). A decision to reopen a case is committed to the sound discretion of the court considering "the equities of each case with an eye toward the principles which underlie the Bankruptcy Code." *In re Kapsin*, 265 B.R. 778, 780 (Bankr. N.D. Ohio 2001). The reopening of a case, by itself, affords no independent relief, but merely gives a bankruptcy court the opportunity to act on a substantive request for relief. *In re Kirksey*, 433 B.R. 46, 48 (Bankr. D. Colo. 2010). One of the important factors for a court to consider in exercising its discretion in deciding a motion to reopen to administer assets is the benefit to creditors. *In re Arana,* 456 B,.R. 161, 173 (Bankr. E.D.N.Y. 2011). A case will not be reopened, however, "if doing so would be futile." *In re Jenkins*, 330 B.R. 625, 628 (Bankr. E.D. Tenn. 2005); *see also Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 472 (6th Cir. 1998). As an example of futility, where the court cannot afford the moving party the requested relief the court does not abuse its discretion in refusing to reopen the case. *Kirksey, 433* B.R. at 48-49 (citing *In re Schicke*, 290 B.R. 792, 798 (B.A.P. 10th Cir. 2003)).

There are a legion of problems with the effort to reopen this case.

First, Debtor's Schedule B, which was filed on Debtor's behalf by the same Dale LLC that appears on Schedule F as an unsecured creditor and "Investor" and that is signed under penalties of perjury, discloses no such cause of action as an asset of the Debtor's. The case was commenced as a "no asset" case on the representations of Debtor on the petition. The only asset listed on Schedule B is the $85 bank account.

Second, Parker reports that notwithstanding the lack of disclosure of this cause of action as an asset of the Debtor's, she had explicitly been made aware of such a potential claim. [*See also* Doc. # 21, Exhs. 2 and 3]. She determined, however, that any such cause of action was time-barred on behalf of the entity and thus the bankruptcy estate because the reach back periods had expired under both the Bankruptcy Code (2 years), 11 U.S.C. § 548(a), and applicable Ohio fraudulent transfer law (1 or 4 years), Ohio Rev. Code § 1336.09, as it may be incorporated through the Bankruptcy Code strong arm power, 11 U.S.C. § 544(b). BACM on the other hand had timely commenced its own federal court lawsuit within the applicable Ohio fraudulent transfer law reach back period. As such, Parker declined to pursue any such claim and filed her no asset report.

Third, even if there is a viable entity cause of action that Parker could assert on behalf of the bankruptcy estate against the "investors," there are no assets in the estate with which to fund such litigation. As the "investors" undoubtedly know, the $85 bank account will not go very far in funding contested commercial litigation.

Fourth, the same "investor" who filed Debtor's petition through LaValley, and which is also listed as an unsecured creditor owed $501,014.00 and is one of the putative Defendants with respect to such a cause of action, was undoubtedly aware of the cause of action well before the apparent epiphany represented by the Motion. Yet it never sued itself and the other "investors" on behalf of the limited liability company Debtor when it had the opportunity to do so before the claims became time barred. The Debtor is really carrying water for the "investors" and does not make this request with clean hands.

Fifth, this is really a one creditor/one debtor dispute that has little reason to be involved in the collective process of bankruptcy in support of the principle of equality of distribution given that the other "creditors" identified in this case are both the would-be defendants and insiders as the members and owners of the Debtor. Unlike other situations that raise the time-honored principles of *Moore v. Bay*, 284 U.S. 4 (1931), BACM is the only non-insider creditor listed. It is pursuing and protecting its own claims

and interests. *But cf. CH Holding Co. v. Miller Parking Company*, Case No. 2:12-CV-10629, 2012 U.S. Dist. LEXIS 158782 (E.D. Mich. Nov. 6, 2012). To the extent the "investors" actually have general unsecured claims against Debtor, they are subject to subordination, 11 U.S.C. § 510(c). *See also* 11 U.S.C. § 502(d). And any cause of action that the Trustee would pursue and recover on would come burdened with an administrative expense for a Trustee's commission, *see* 11 U.S.C. § 326(a), that would unnecessarily reduce any distribution to BACM as Debtor's only non-insider creditor.

Sixth, Debtor's argument that the time-barred fraudulent transfer action against the "investors" belongs in bankruptcy court and not in federal district court shows only that the twists and turns of bankruptcy court authority ensuing after *Stern v. Marshall*, –U.S.–, 131 S. Ct. 2594 (2011), including the Sixth Circuit's most recent pronouncements on the subject in *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012), have not been closely followed.

In summary, the court does not presently need to and cannot afford *the Debtor* any relief by reopening the case. It is not entitled to a discharge or any exemptions. There is no business needing liquidation in orderly fashion; there hasn't been for a long time.

Debtor's stated reason for reopening is that there is an asset to administer for the benefit of all creditors, a la *Moore v. Bay*. The court disagrees. As Parker reports, there are still no assets to administer notwithstanding Debtor's argument. Any potential claim that she could assert under §§ 544 or 548 is defective because the reach-back periods expired before the Chapter 7 case was commenced on January 24, 2011. *See also* 11 U.S.C. § 546(a). Debtor's counsel does not contest this point. Even if there were such a claim, there are no funds with which to pursue it. And the only non-insider creditor who would benefit is pursuing its own claim and is now entitled to do so as the federal district court has determined. The "investors" undoubtedly know all of this. The apparent goal of reopening this case is thus to force Parker to file a time-barred lawsuit lacking any resources to pursue it, Rule 11 be damned, and suffer a dismissal with prejudice. Then the "investors" could try to wield that action and its dismissal as another sword in the BACM lawsuit to argue for a further stay and ultimately judgment in their favor on the basis of claim preclusion. Parker in the court's view properly exercised her discretion in filing a no asset report in this case and in declining to follow this path. *See Vasquez v. Adair (In re Adair)*, 253 B.R. 85, 91 (9th Cir. B.A.P. 2000). Counsel has not pointed the court to any authority that would permit it to override a Trustee's

discretion and order pursuit of a lawsuit she has already passed on for clear and persuasive reasons.[2]

With there being no relief to be afforded to Debtor and the reason for reopening identified as administration of what is a phantom asset, the court finds no other cause to reopen this case. There was no bankruptcy purpose for filing the case in the first place and no bankruptcy purpose to be achieved now by reopening it. The court will enter its separate order denying the Motion in accordance with this memorandum of decision.

###

---

[2]The time for trying to elect a different, more pliant permanent trustee expired at the meeting of creditors, 11 U.S.C. § 702(b), and would not be revived upon reopening. The "investors" would not appear to be eligible to vote in such an election in any event. 11 U.S.C. § 702(a).